PETER A. HAGGLUND v. ST. HILAIRE LUMBER COMPANY.[1]

January 12, 1906.

Nos. 14,619—(123).

**Proximate Cause of Injury.**

Plaintiff, twenty-two years of age, but without experience, while at work at a sorter in a sawmill, was directed to pile lumber in an aisle because of shortage of employees. The lumber so piled for some unexplained reason fell on plaintiff and produced the damage here sought to be recovered. It is *held* that the failure to employ the usual number of fellow servants was not the proximate cause of the harm plaintiff suffered.

**Assumption of Risk.**

He assumed the obvious risks of his employment.

[1]Reported in 106 N. W. 91.

Action in the district court for Red Lake county to recover $2,000 for personal injuries. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for $1,800. On motion the verdict was set aside and judgment ordered for defendant. Plaintiff appealed from the judgment. Affirmed.

*H. Steenerson* and *Charles Loring,* for appellant.

*Morton Barrows,* for respondent.

JAGGARD, J.

This action was brought by the plaintiff and appellant against the defendant and respondent to recover damages for personal injuries sustained by him while in defendant's employ as a laborer in their sawmill on February 14, 1900. The jury rendered a verdict in favor of plaintiff, which on motion of the defendant was set aside. Judgment was entered in favor of the defendant notwithstanding the verdict, from which judgment this appeal was taken on March 8, 1905.

The facts which appeared in evidence in the trial court are briefly as follows: The plaintiff, a farmer boy twenty-two years old, without any previous experience in such work, was put to work by the defendant in a sawmill, on a sorter, piling lumber taken from the conveyor or sorter and piled on rollers. The conveyor carried lumber in lengths from four to thirty feet, from the saws on the second floor down to the first floor and on for a distance of fifty to one hundred feet, by means of moving chains, which moved about half as fast as an ordinary walk, to a platform or "sorter," as it was commonly called. On each side of the conveyor was a set of rollers, about two feet above the floor, upon which the lumber was piled to be shoved on wagons. Between the roller table and sorter there was a space of six or seven feet in which the workmen walked in going with the lumber from the sorter to the piles on the rollers. There were usually ten to twelve men employed on the sorter, stationed on opposite sides thereof, each taking care of lumber bearing certain marks. When lumber came too fast for the plaintiff to take away, the man opposite to him would pile several pieces on top of each other on the conveyor, so that he could have it handy to carry to the rollers. On the night of the injury the man

who usually helped plaintiff was absent, and the sorter crew was at least two men short. The boards came so fast that the plaintiff could not pile them all on the rollers as they came. This emergency had not happened before, and he spoke of it to the foreman, who directed him to throw the boards on the floor when they came too fast for him. This he did, with the result that a pile of lumber about three feet high and about seven feet wide accumulated in the passage, leaving just a little space in which to walk between the sorter and rollers. This pile fell upon plaintiff's foot while he was passing near it, causing the injury complained of. Whether the pile fell from its own weight, or from contact with long boards on the conveyor or the conveyor chain, does not appear. At the time of the injury plaintiff had been employed at this particular work in the nighttime for about three weeks. The only question raised on this appeal is the correctness of the court's ruling in ordering judgment for the defendant notwithstanding the verdict.

There is practically no dispute as to the elementary principles of law applicable to this situation. There can be no question that under appropriate circumstances recovery may be had by one injured through his employer's negligence in failing to furnish a sufficient number of fellow servants, as in Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913.

In the instant case the failure to employ the usual number of helpers was not the proximate cause of the injury. In point of physical fact, it resulted in the subsequent order of the foreman to pile the boards in the aisles and in the consequent accumulation of the boards at a place therein. In point of law, it produced a condition of the injury. Counsel for plaintiff says: "This pile, either by reason of the lumber moving in close proximity on the chains coming in contact with it or of its own weight, fell and injured the plaintiff." The plaintiff, if he can recover at all, can succeed only upon the second ground of negligence set forth in his complaint, viz., that the foreman was negligent in ordering the plaintiff to throw boards on the floor. That order did not put the plaintiff in a position of immediate danger. It started him at a work in which he himself produced his own peril. That peril was as obvious as the certainty that

a crooked pile of child's blocks will fall when it becomes sufficiently top-heavy or when it is struck. "The fact that the servant at the time he was injured was complying with a direct, specific, personal order of his master * * * has * * * a material bearing upon the question whether he can hold the master responsible. * * * The evidential significance of this fact will be found to be simply this: That it goes to show that the servant's ignorance of the risk to which his injury was due was excusable, or that his action was not entirely voluntary. It tends to negative the availability of the various defenses which * * * are essentially dependent upon proof that the servant voluntarily encountered a danger, which was or ought to have been comprehended by him." Labatt, M. & S. § 433; Haley v. Case, 142 Mass. 316, 7 N. E. 877. Under the circumstances of this case, however, it is clear that, notwithstanding the master's order, the servant assumed the risks of his employment, created by his own work, present to his sight, obvious at a glance, and as familiar as any experience in life.

Judgment affirmed.

LEWIS, J. (dissenting).

The necessity of piling lumber in the aisle was caused by respondent company itself in withdrawing the workmen necessary to take the lumber from the conveyor in the ordinary and usual manner. Appellant did not create the condition, but was directed to resort to an unusual method of disposing of the lumber, which accumulated too fast for him to take care of. True, if the risk of continuing the employment, as directed, was obvious to a man of ordinary prudence, he assumed the risk by remaining and continuing in the work. I concede that if no orders had been given, and appellant had resorted to this method of his own accord, then he could not complain of the fact that he did not succeed in safely piling the lumber; but he was working under express orders to meet an emergency caused by the company itself, and all that was required of him, under the circumstances, if he assumed to carry out the order, was to use that degree of care required of a man of ordinary prudence. Whether he did, or not, exercise ordinary care depended upon his

experience—it is admitted that he was inexperienced—and upon his opportunity to observe and judge of the dangers caused by piling the lumber under the circumstances. If he was doing the best he could reasonably be expected to do, considering his experience, then he was not to blame because he did not take more time to pile the lumber more carefully, and allow it to accumulate or go by on the conveyor. If he appreciated the possibility that the pile would fall over, then it was his duty to let the conveyor take care of itself; but he was working in the interests of his master, under direct orders, and there is no rule of law which will hold him absolutely responsible under such circumstances. The company was originally guilty of negligence in bringing about that condition, and it was not relieved from responsibility unless appellant "produced his peril." Whether he did, or not, was a question of fact. The evidence is not conclusive one way or the other. For these reasons, I think a new trial should be granted.