[Decided June 29, 1893.]

## BROWN *v.* OREGON LUMBER CO.

[S. C. 33 Pac. Rep. 557.]

| 24 | 315 |
|----|-----|
| a26 | 564. |
| 33* | 557 |
| 33* | 708 |
| 24 | 315 |
| 31 | 285 |
| 24 | 315 |
| 34 | 249 |
| 24 | 315 |
| a36 | 147 |
| 24 | 315 |
| 41 | 89 |
| 24 | 315 |
| 44 | 464 |
| 44 | 474 |
| 24 | 315 |
| 46 | 242 |
| 24 | 315 |
| f48 | 39 |

1. NONSUIT*— SUFFICIENCY OF EVIDENCE.— A motion for a nonsuit is in the nature of a demurrer to the evidence,—it admits the truth of the plaintiff's testimony, together with every inference of fact which the jury may legally draw from it. The sufficiency of the evidence is for the jury, provided the court shall be of opinion that there is any evidence tending to sustain the complaint.

2. MASTER AND SERVANT — ASSUMING RISK.— A servant assumes not only the risks ordinarily incident to his employment, but also such increased risks as he knowingly and voluntarily undertakes. Under this rule a servant who was employed with others in piling ties in a box car, blocking them as piled, but ceases to block them upon the direction of the foreman to hurry up, and the pile of ties falls on him, cannot recover, as the increased risk from not blocking the pile was evident, and he must be considered to have assumed it.

Baker County: MORTON D. CLIFFORD, Judge.

Action by Paton Brown against the Oregon Lumber Company to recover damages for personal injuries. A nonsuit having been granted, plaintiff appeals. Affirmed.

*Williams & Smith*, for Appellant.

*Johns & Rand*, for Respondent.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

This was an action brought by the plaintiff to recover damages from the defendant for an injury sustained by him while employed in its service. The alleged negligence of the defendant consisted of carelessly causing a pile of railroad ties to be so placed in a box car, which plaintiff was assisting in loading, that the ties fell upon him, producing the injury complained of. Substantially the facts are, as appears from the testimony, that the

*NOTE.— See also *Hurbert* v. *Dufur*, 23 Or. 462, on this point.—REPORTER.

defendant is a corporation, engaged in operating a saw mill, manufacturing railroad ties and lumber, and that it had a quantity of such ties at Pleasant Valley, on the line of the Union Pacific Railroad, ready for transportation; that one Carver was employed by the company to load box cars with ties, and was also authorized to hire men to aid in the work of loading them; that he hired the plaintiff at his own request, and also employed others, among whom was plaintiff's son, to assist in performing such work, and that there were in all six men, including Carver, who acted as foreman, engaged in the work; that in going into the car, two men would carry a tie, one carrying each end, so that each two men would carry every third tie into the car and put it into place; that the plaintiff and his son worked together; that the ties were six inches thick and eight inches wide, and were piled, one on top of the other, nine or ten high. At the time the accident happened, the car was almost loaded with ties, and plaintiff and his son had assisted in carrying in about four piles of such load into this car. Just before the accident happened, they entered the car, one ahead of the other, and the length of a tie apart, and, placing the tie which they were carrying on the floor, turned around and were going out, when the pile fell and struck the plaintiff, knocking him out of the car, and causing him the injury complained of. The testimony also shows that the plaintiff and his son had been engaged in such work about three weeks, as likewise had the others, including Carver, who was anxious, as this was the last car, to have it loaded in time for transportation; that the usual manner of piling ties in a car was by blocking, and that they had been so piling and blocking when Carver ordered them to hurry and pile them in one on top of another. Upon this state of facts the defendant moved for a nonsuit, on the ground of the insufficiency of the evidence, which the court granted, and from the judgment rendered therein this appeal is brought.

1. The principal contention of the plaintiff is that the court erred in allowing defendant's motion for a nonsuit. A motion for a nonsuit is in the nature of a demurrer to the evidence; it admits not only all that the evidence proves, but all that it tends to prove. The evidence given for the plaintiff must be taken to be true, together with every inference of fact which the jury might legally draw from it. Whether there is any evidence tending to prove the material allegations upon which a cause of action is based is a question of law for the court, but whether a given amount of evidence is sufficient to sustain such allegation is a question of fact for the jury. When there is no evidence tending to sustain the plaintiff's 'cause of action, it is the duty of the court to grant the nonsuit and withdraw the case from the jury. As TENNEY, C. J., said: "When the plaintiff's evidence, taken in its full strength, has no tendency, in the opinion of the judge, to maintain the issue for him, it is an useless consumption of time to hear evidence in defense, and after that direct a nonsuit": *Bragdon* v. *Appleton M. F. Ins. Co.* 42 Me. 260. Certainly it would be an idle proceeding to submit evidence to a jury when they could justly find one way only: *North Pennsylvania R. R. Co.* v. *Commercial National Bank*, 123 U. S. 733 (8 Sup. Ct. Rep. 266).

2. We are to inquire, then, whether the injury of which plaintiff complains was caused by the negligence of the defendant, or by the contributory negligence of the plaintiff. The general rule of law is that a servant assumes all the risks ordinarily incident to his employment, and also all additional or unusual risks which he may knowingly and voluntarily undertake. It is one of the implied conditions of every contract for employment that the servant is competent to discharge the duties for which he is employed: Wood, Master and Servant, 166. In accepting service, he not only assumes the risks reasonably to be anticipated as incident to it, but he also

assumes that he has the capacity to understand the nature and extent of such service, and has the requisite ability to perform it. It is his fault if he undertakes the employment without sufficient skill, or applies less than the occasion requires. As the plaintiff is a man of sixty years of age, and possesses ordinary sense and intelligence, it legally results that when he accepted employment in loading box cars with ties, he asserted and assumed that he had the requisite capacity to understand and discharge the duties of workmen engaged in such employment.

The next inquiry is, whether it was such negligence on the part of the defendant to pile the ties in the car without blocking, under the circumstances indicated, as would render it liable for the injury the plaintiff incurred. It is the duty of the master to conduct his business, or the work in which he is engaged, so as not to expose his servants to risks or dangers which may be guarded against, or avoided, by the exercise of due care. His duty in this regard is the same as devolves upon him to select competent servants, or supply them with appliances suitable to do the business or work in which they are engaged. If the mode of doing the work is dangerous, and not apparent, he is bound, if the servant is inexperienced, and does not comprehend it, to point out and explain such danger so as to enable him to understand it and do the work safely. But when the mode of doing the work requires no particular skill or experience, and the liability to injury can only arise from its negligent performance, or where the doing of such work in some other mode may be less secure, but the increased risk is apparent and understood by any one of ordinary sense and intelligence, if the servant voluntarily undertakes it, the master is not liable for an injury resulting to him. The evidence shows that the usual mode of piling ties was by blocking them as they were piled, and that this mode was pursued until the last car was reached and partially loaded, when the foreman told the men to hurry up and

pile them one on another. It is not clear by the record that he meant by this that they should cease blocking the ties as they piled them; on the contrary it affirmatively appears that such order was not made in direct terms. It seems, however, to have been so understood by them, as, after this direction to hurry up, they piled them without blocking until the car was nearly filled, when the tier they were piling up fell and injured the plaintiff. The ties were eight inches wide and six inches thick, all the surfaces of which were flat, and they were piled nine or ten high, which would make the height of a tier five feet. It is plain, nor is it disputed, that with such a surface the ties could be piled one on another five feet high with reasonable safety against their falling, as several tiers had been so piled; but it is equally plain that to so pile them without blocking is less secure against falling than with blocking. Necessarily, as the height of the tier increases, unless commensurate care is observed, its tendency to fall is augmented. The risk of doing the work, however, was open to any observation. It needed no special knowledge to discover it. The piling of ties is not a work in which any peculiar knowledge or experience is involved, but is a work in which all have the same opportunity of judgment. Plaintiff knew and appreciated, just as well as the foreman, the nature of the risk involved in the different mode of piling the ties. A servant not only assumes the risks ordinarily incident to his employment, but he also assumes such increased risks as he may knowingly and voluntarily undertake. In such case the servant is not bound to incur the increased risk unless he chooses, but, when he understands and appreciates it, he is responsible himself for an accident arising out of his performance of such services; so that if the risk was increased by the change in the mode of piling the ties, such risk being open and appreciable to any one of common observation and experience, it was voluntarily undertaken. The cases cited in refer-

ence to work of a dangerous character, or orders. given under circumstances which exposed the servant to unusual risk, where the negligence consists mainly in not informing him, have no application to the present case. Under the circumstances of this case we do not think there was any error. AFFIRMED.