## A. C. McCUTCHEON v. VIRGINIA & RAINY LAKE COMPANY.[1]

April 28, 1911.

Nos. 16,975—(67).

**Assumption of risk — evidence.**

In an action to recover for personal injuries alleged to have been caused by the negligence of defendant, it is *held* that plaintiff's assumption of the risks of the employment conclusively appears from the evidence.

Action in the district court for St. Louis county to recover $297.50 special damages and $25,000 general damages for injuries

[1]Reported in 130 N. W. 1023.

received while in defendant's employ. The facts are stated in the opinion. The answer alleged that the location of its place of business was in the city of Virginia and demanded that the action be tried at the place of holding court nearest its residence and place of business, as provided by Laws 1909, c. 126. The reply alleged that defendant's principal office was at No. 413 Lyceum building, in the city of Duluth, and that it conducted its business in that city. The case was tried before Cant, J., and a jury which returned a verdict in favor of plaintiff for $2,750. From the judgment entered pursuant to the verdict, defendant appealed. Reversed and judgment ordered for defendant notwithstanding the verdict.

*Washburn, Bailey & Mitchell,* for appellant.

*Thomas J. Davis* and *J. A. P. Neal,* for respondent.

BROWN, J.

Action to recover damages for personal injuries alleged to have been caused by the negligence of defendant. Plaintiff had a verdict. Defendant moved for judgment notwithstanding the verdict, which was denied. Judgment was entered for plaintiff, and defendant appealed.

The facts are substantially as follows: Defendant is a corporation engaged in the manufacture of lumber at the city of Virginia, this state. In its lumber yards, connected with its sawmill, defendant had constructed a number of tramways, upon which were operated tram cars or trucks used in conveying lumber from the mill to the yards, where it was sorted and piled, or to adjacent railroad tracks, and loaded upon cars for shipment. The tramways consisted of trestle work, and were elevated above the ground from ten to fifteen feet, and the one involved in this action was sixteen feet wide. Two parallel tracks were laid thereon, upon which the trucks were moved from the mill to the yards or railroad. The trucks frequently became derailed, and it became necessary to return them to the track without removing the lumber with which they might be loaded. This seems to have been accomplished under methods adopted by those in charge of the work. Plaintiff was in the employ of defendant as a scaler and grader of the lumber.

During the day of July 22, 1909, one of the trucks loaded with lumber became derailed, and the superintendent ordered and directed plaintiff to take the crew of four men, of which he was foreman, and replace it upon the track. Plaintiff proceeded with his men to the tramway, examined the situation and condition of the truck, and found the forward wheels off the track. He was not instructed in reference to any particular method of returning the wheels, and adopted one which seemed to him feasible and appropriate. He determined to raise the load of lumber at the forward end, so that the weight thereof would rest over and upon the rear wheels, when the derailed wheels could readily be replaced. He stationed three of his men at the forward end of the load and one at the rear, taking a position himself on the side thereof, a few feet from the end and next to the outer edge of the tramway. Plaintiff and the three men then raised the load, and, it is claimed, upon being so raised, the end of the load suddenly shifted toward and against plaintiff, throwing him from the tramway to the ground below, and injuring him. The space between the side of the truck, where plaintiff was standing, and the edge of the tramway, was about twelve inches, and upon this narrow foundation he attempted to aid in raising the load of lumber.

The evidence offered by defendant tended to show that plaintiff slipped and fell off the tramway, and that there was no shifting of the load of lumber. But this is unimportant. The case must be disposed of upon the theory that the accident happened in the manner claimed by plaintiff. The jury so found.

The theory of negligence, the basis of plaintiff's action, as it developed on the trial, was that defendant failed in its duty to plaintiff in not providing him a reasonably safe place in which to do his work, in not instructing him in reference thereto, and in not warning him of the dangers incident to its performance. It appears from the evidence that the tramway had no railing or other barrier along its sides to prevent persons falling from the same, and the absence thereof is the basis of plaintiff's contention that the place of work was unsafe. It also appears that plaintiff was given no instructions in reference to the proper method of returning the truck

to the track, and was not warned of the dangers incident to the work. The trial court instructed the jury that the statutes of the state requiring dangerous places in or about factories or workshops to be guarded did not apply to the tramway in question, but left them to determine whether defendant, irrespective of the statute, was chargeable with negligence in not doing so, and also in failing to warn and instruct plaintiff.

We deem it unnecessary to determine the question whether the court erred in submitting to the jury the question of guarding the tramway. For the purposes of the case it may be conceded that the question was properly submitted to the jury, and that the evidence sustains the verdict in that respect. The record, however, does not sustain the submission of the issue of defendant's negligence in respect to warning and instructions, and in our view of the evidence plaintiff's assumption of the risks conclusively appears.

Plaintiff was thirty-four years of age, a person of intelligence and education. Previous to his employment with defendant, he had had ten or more years' experience in and about sawmills and lumber yards, including yards of the character of defendant's. His duties in this employment were scaling and grading manufactured lumber, and he had four other employees under his charge to assist in the work. He was familiar with the tramways and their uses, and, though he had not previously engaged in the work of righting derailed cars, he was aware of the fact that they frequently ran off the track and were returned without removing the lumber upon them. His intelligence and long experience in such yards rendered instructions in respect to the work in question unnecessary. He requested none, and when ordered by the superintendent to put the car back on the track he carefully, according to his testimony, examined the situation with which he was confronted and well understood all the conditions surrounding the task. There were no hidden or concealed dangers of which he was entitled to warning. All were open and apparent to observation, and of which the law charged him with notice. Had plaintiff been a common laborer, wholly unfamiliar with such work, or not of sufficient intelligence

to comprehend the dangers surrounding it, a different question would perhaps be presented.

It was not shown that an accident of this character ever occurred before in these yards, nor that a load of lumber, weighing three tons, was likely to shift to one side when one end thereof was raised, and defendant had no reason to anticipate that such might occur on this particular occasion. Upon the undisputed evidence, therefore, we conclude that plaintiff assumed the risks of this employment, and cannot recover. Galland v. Great Northern Ry. Co., 101 Minn. 540, 111 N. W. 1133; Stenvog v. Minnesota Transfer Ry. Co., 108 Minn. 199, 121 N. W. 903, 25 L.R.A.(N.S.) 362; Tomczek v. Johnson, 110 Minn. 320, 125 N. W. 268; Hostager v. Northwest Paper Co., 110 Minn. 408, 125 N. W. 902.

Judgment reversed, and judgment for defendant notwithstanding the verdict is ordered.