## W. F. ANDREWS v. FLOUR CITY PAPER BOX COMPANY AND OTHERS.[1]

December 7, 1928.

No. 27,049.

*Friedman & Segal,* for appellant.
*Arthur H. Anderson,* for. respondent.

HOLT, J.

Defendant Flour City Paper Box Company appeals from an order denying it a new trial after a directed verdict for plaintiff.

The action was upon a promissory note for $500, executed by defendant, payable to the order of J. E. Thwing & Son, duly indorsed by the payees and transferred to plaintiff before maturity in

[1]Reported in 222 N. W. 340.

consideration of $490 then paid therefor. The defenses pleaded were that the consideration for the note had wholly failed; that the title to the note was defective, having been negotiated in bad faith; and that plaintiff was not a holder in due course.

The first contention is that the trial court erred in granting the motion for a directed verdict, because in moving therefor no grounds were specified. Good practice requires that ground should be stated. Bartels v. C. & N. W. Ry. Co. 118 Minn. 250, 136 N. W. 759. But no objection was made by counsel to the court's entertaining the motion, nor in the motion for a new trial was any complaint made because of informality in the motion. It is too late now to raise a point of practice not called to the attention of the trial court.

Did the evidence justify the court in directing a verdict for plaintiff? We think it did. This appears without dispute: J. E. Thwing & Son were real estate and loan agents in Minneapolis and negotiated a sale of a business property in that city owned by plaintiff to one S. B. Gelman, an officer and principal stockholder of defendant. A contract of purchase and sale was duly executed by the parties. The price to be paid was $27,500, $1,000 of which was paid when the contract was signed. J. E. Thwing & Son were also to negotiate a loan upon the property for Gelman in the sum of $35,000, $20,000 of which was to be available when Gelman had placed additional betterments or improvements thereon to the extent of at least $18,000. The commission to J. E. Thwing & Son for negotiating the sale as well as for obtaining the loan was to be paid by Gelman, in the sum of $1,000, on which $175 should be credited when the loan was completed. A day or so after the contract was signed J. E. Thwing & Son induced Gelman to have the note in suit made and delivered under these circumstances testified to by the son of Gelman and an officer of defendant: After stating that Mr. J. E. Thwing came around and wanted his commission, he continues:

"I refused to give him any cash until the deal was over. * * * He prevailed upon my dad, being a real friend, and dad offered him —and they prevailed upon me to give them a note. * * * I told

him if he would hold that note, we would give it to him, but otherwise we would not have anything to do with him at all. * * * After the deal was closed, he was supposed to return the note, and after we got the money from the insurance company, we were to give him the $1,000 for his commission."

For some reason, not clearly disclosed, the vendor and vendee by mutual consent abandoned or rescinded the contract, and the $1,000 part payment was returned to Gelman. There was some claim of defect in the title of plaintiff to the real estate but no ' proof adduced, except a statement of the attorney for Gelman that plaintiff said that he was not able to perfect the title at that time. At any rate, the rescission was by the mutual agreement of the parties to the contract, in which J. E. Thwing & Son had no voice, nor does it appear that they knew thereof until it had taken place. No opportunity was given the agents to remove the obstacles, if any, which stood in the way of a full performance of their undertaking.

Unless the employment contains conditions to the contrary, a real estate agent earns his commissions when he procures a valid and binding agreement of sale to be executed by the vendor and vendee. That was done here. Unless that contract was carried out it was not possible for the agents to negotiate a loan for Gelman on the property. In this situation it cannot be held that the consideration for this note has wholly failed or that it was without consideration. There being a consideration, the title thereto could not become defective within the purview of G. S. 1923, § 7098, N. I. L. § 55. Snelling State Bank v. Clasen, 132 Minn. 404, 157 N. W. 643, 6 A. L. R. 1663; Midland Nat. Bank v. Farmers Co-op. Elev. Co. 157 Minn. 348, 196 N. W. 275; U. S. Mtg. Co. v. Hotel Radisson Co. 161 Minn. 231, 201 N. W. 318; and Veigel v. Johnson, 163 Minn. 288, 204 N. W. 36, seem to dispose of defendant's contention that there was defective title to the note so as to place the burden upon plaintiff of proving that he was a holder in due course. There could be and was no claim of fraud in the procurement of the note. But we are also of the opinion that the record shows conclusively that plaintiff was a holder in due course under G. S. 1923,

§ 7095 (N. I. L. § 52). He bought the note two days after it was given, while the contract in the procurement of which agent's commissions could be earned was in force, and paid within $10 of the full face value thereof.

The order is affirmed.