ROBERT EICHELER vs. JOSEPH HANGGI and others.

March 18, 1889.

**Master and Servant—Dangerous Machine—Adjustment while in Use.**
The duty of the master to see to it that the machinery furnished for the use of his servants is reasonably safe does not extend so far as to require him to attend to the proper regulation of those parts which necessarily have to be adjusted in the course of the use, and with regard to the particular work to be done, and the adjustment of which is incident to the ordinary use of the machine.

**Same—Contributory Negligence.**—The plaintiff, a skilled mechanic, alleging negligence of the master in not having a movable table or platform, connected with a circular saw, properly secured in place, *held* chargeable with contributory negligence in not paying any attention to the mode in which the same was secured, he knowing that the table was movable.

Appeal by defendants (partners as the St. Paul Furniture Company) from an order of the district court for Ramsey county, *Wilkin,* J., presiding, refusing a new trial after verdict of $2,000 for plaintiff.

*I. V. D. Heard,* for appellants.

*John D. O'Brien* and *Moritz Heim,* for respondent.

DICKINSON, J. This action is to recover for injuries alleged to have been caused by the negligence of the defendants in respect to the condition of a circular saw upon which the plaintiff was called to work. The defendants, as partners, were carrying on a manufacturing business, in which they employed machinery run by steam-power, among which was this circular rip-saw, set in a frame-work, on which was a wooden table, through which the saw projected from below; the axis of the saw being beneath the table. On this table the ma-

terial to be sawed was intended to rest, the operator sliding it along the table against the saw. This table was constructed so that it could be raised or depressed as the thickness of the material being sawed might require. For this purpose the table was hinged on one side, and on the opposite side had been originally held at any desired height by means of two wooden strips attached to the table, and which could be fastened to the frame beneath by set-screws. Some months before the accident these wooden strips had become worn so smooth that the screws did not securely hold them from slipping, and the person who was accustomed to operate the saw had removed the screw, and substituted another means of holding the table in position, of which the defendants had been informed. This was by placing a strip of wood, of such thickness or width as would give the proper elevation to the table, under the edge of the table, and resting on the frame-work of the machine; and on this the weight of the table rested. At the time of the accident the strip in use for this purpose was about three inches wide, and less than one inch thick. It was so adjusted under the table that when the plaintiff commenced sawing with the machine, as the plaintiff's testimony goes to show, the stick fell over on its side, letting the table suddenly drop, resulting in bringing the plaintiff's hand in contact with the saw so that three fingers were cut off. There was also evidence going to show that there was a good deal of tremulous motion to the machine when in operation, which the plaintiff claims must have caused the stick to fall.

As to the question of the defendants' negligence, the conclusion of the jury is perhaps sustainable. As we place our decision upon another ground, we may assume that the plaintiff's claim in that regard is well founded. We will only add, upon this point, that the defendants had been informed of the substituted arrangement adopted by their servants for supporting the table, and the court did not err in excluding from the jury the question whether the accident was attributable to the negligence of a fellow-servant. But we think that, assuming the machine to have been peculiarly dangerous in that particular to which we have referred, the evidence shows *prima facie* a want of reasonable care on the part of the plaintiff, and that this is

not opposed or explained away by other evidence in the case. The plaintiff was of adult age, a wood-turner by trade, and for nine years had been engaged in that occupation, and, as may be assumed, was accustomed to the use of machinery. Some time prior to the accident he had been in the defendants' employ for about two years in this same shop, and had operated this saw to some extent,—how much is not shown; but from his own testimony, stating that he had used the saw, and explaining how the table was at that time adjusted and kept in place, and from the fact that he was unable to state "for a week" (within a week) the length of time he had used it, it is to be inferred that he had used it to a considerable extent, and was acquainted with the operation of the machine in the respects here in question. That was before the change was made in the device for supporting the table, and it is true that he does not appear to have been informed or to have known of this change. After having been for some months out of such service, the plaintiff was again employed, the day before the accident; and at the time of the occurrence under consideration, in the absence of the man who was accustomed to operate this saw, the plaintiff was called upon to do so. Directly after commencing to saw upon the machine the accident occurred. It appears by his own testimony that the plaintiff did not examine the machine at all before commencing to use it, and so did not discover the mode then employed for supporting the table.

The duty of the master to furnish reasonably safe instrumentalities for the use of his servants does not extend so far as to require him to attend to or secure the proper regulation of those parts which necessarily have to be adjusted in the course of the use of the implement, with regard to the particular work to be done, and the adjustment of which is properly incident to or a part of the particular service which the servant is himself called upon to perform. This is equivalent to saying that a servant who neglects ordinary caution in the discharge of his duties does so at his own peril. For instance, this saw was provided with a movable gauge, attached to the table beside the saw, to regulate the width of the pieces to be sawed. It could not be said to be the implied duty of the employer to attend to the proper setting of this gauge for the use of the servant employed to operate the saw;

and if the latter were to suffer an injury from using the saw without seeing that the gauge were fastened, there being no defect in the machine, the master would not, in general, be responsible. We are assuming, as must be done in this case, that the employe is a person of adult years and discretion, and of such experience that he must be presumed to know the necessity for attending to such things.

The case being such as we have stated, the plaintiff must be deemed to have known that it was necessary that the table, which he knew was not stationary, be fastened in place by some means, and that this was to be done by the operator as occasion required; and he had no reason to suppose that it was securely fastened at that time. If he had given any attention to the subject, he would have seen that the screws by which it had formerly been secured in place had been removed. Yet he gave no attention to the subject. This, unexplained, must be looked upon as negligence. It is evident that the plaintiff did not know, and the case does not show, whether the stick used to support the table was properly in position when he commenced sawing, or whether, since the saw was last used,—probably the day before,—it had been displaced so as to rest upon a corner or angle, rather than in upright position upon its narrow side. Upon the ground that the case shows, *prima facie*, contributory negligence, we are of the opinion that the verdict was not justified.

Order reversed.

MITCHELL, J.   I concur in the result on the ground that the evidence did not show any negligence on part of defendants.